940 So.2d 711 (2006)
STATE of Louisiana, Appellee
v.
Jamie JOHNSON, Appellant.
No. 41,428-KA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2006.
*714 Phyllis E. Mann, Alexandria, Derrick D. Carson, for Appellant.
William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, for Appellee.
Before WILLIAMS, GASKINS and MOORE, JJ.
WILLIAMS, J.
A Franklin Parish grand jury returned an indictment charging the defendant, Jamie Johnson, with the second degree murder of Darryl Baker. Following a trial, a jury convicted the defendant of the responsive verdict of manslaughter. The trial court sentenced him to serve 20 years in prison at hard labor, with credit for time served. The defendant now appeals. For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
The victim, Darryl Baker, and his wife, Katrina Baker, were residents of the Westwood Apartments, which were owned by Farrington Johnson ("Johnson"), the defendant's brother. On May 25, 2004, Johnson went to the Bakers' apartment to discuss past due rent and to deliver an eviction notice, but no one answered the door. Later that day, Johnson sent his maintenance employee, Ace Smith, to deliver the notice to the Bakers. While at the Bakers' apartment, Smith used his cellular phone to call Johnson, and Johnson and Darryl Baker spoke. Johnson, accompanied by the defendant, later returned to the apartment complex to speak to Baker in person.
When Johnson and the defendant arrived at Westwood Apartments, Baker was standing outside of his apartment. Johnson exited his vehicle, and he and Baker began to discuss the past due rent, eviction and the return of Baker's deposit. The defendant remained in Johnson's vehicle. An argument between Johnson and Baker ensued. Johnson agreed to return Baker's deposit, minus past due rent and a late fee, but he did not have any checks or cash with him at that time. Johnson testified that the defendant exited the vehicle to return Baker's deposit. When Baker reached into a black zippered day planner, the defendant pulled a handgun from his pocket and shot Baker three times, striking him in the chest, left side and left wrist. Baker ran across the street to the residence of Carolyn Brass and Ace Smith. Baker asked for help and told Brass that the defendant had shot him. Brass alerted the authorities. Baker was transported to a local hospital, where he subsequently died from his injuries.
Law enforcement officers soon arrived on the scene and began to interview witnesses. The defendant told the officers that he had shot Baker after Baker reached into a "black bag." Johnson told the officers that the defendant shot Baker during an argument when Baker reached into his "pocket." According to the officers' testimony, when the defendant and Johnson were interviewed on the night of the shooting, neither of them mentioned Baker having a gun. However, two weeks after the shooting, Johnson told an investigator that he saw a gun in Baker's planner. No gun was found on Baker's body or in the day planner Baker was carrying at the time of the shooting, and no weapon, other than the handgun taken from the defendant, was discovered at or near the scene of the crime.
The defendant was placed under arrest. Subsequently, the grand jury charged the defendant with second degree murder. Following a trial, a jury convicted the defendant of manslaughter, a responsive verdict *715 to second degree murder. The trial court sentenced the defendant to serve a prison term of 20 years at hard labor with credit for time served. The trial court denied the defendant's motions for new trial, post-verdict judgment of acquittal and reconsideration of sentence. The defendant appeals his conviction.

DISCUSSION
Sufficiency of Evidence/Self-Defense
The defendant contends the evidence was insufficient to support the verdict of guilty of manslaughter because the state failed to establish beyond a reasonable doubt that he did not act in self-defense or defense of others when he shot Baker. Conversely, the state contends the verdict was supported by the evidence, and the only evidence of self-defense was "highly suspect."
When sufficiency of the evidence and one or more trial errors are raised as issues on appeal, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, XXXX-XXXX (La.10/17/97), 701 So.2d 1333.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App. 2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, Allen v. Louisiana, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
In this case, the defendant was found guilty of manslaughter.[1] The defendant does not deny that he shot Baker three times, inflicting the fatal wound, during a heated argument between Baker and Johnson, the defendant's brother. Thus, we are satisfied that there was sufficient evidence to support the defendant's conviction for manslaughter, unless the state failed to prove, beyond a reasonable doubt, that the homicide was not committed in self-defense.
*716 LSA-R.S. 14:20 provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.

* * *
When self-defense is raised as an issue by a defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Garner, 39,731 (La.App. 2d Cir.9/08/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19; State v. Cheatham, 38,413 (La.App. 2d Cir.6/23/04), 877 So.2d 164, writ denied, 2004-2224 (La.6/24/05), 904 So.2d 717. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary include the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. State v. Spivey, 38,243 (La. App. 2d Cir.5/12/04), 874 So.2d 352; State v. Hardeman, 467 So.2d 1163 (La.App. 2d Cir.1985). Although there is no unqualified duty to retreat, the possibility of escape is a factor to consider in determining whether a defendant had a reasonable belief that the use of deadly force was necessary to avoid the danger. State v. Brown, 414 So.2d 726 (La.1982); State v. Spivey, supra.
In the instant case, Carolyn Brass testified that immediately after she heard three gunshots, she saw Baker running toward her house with a "black book" in his hands. Baker was asking for help, saying that the defendant had shot him.
When law enforcement officers arrived at the scene, the defendant and Johnson were still there. The defendant told the officers that he had shot Baker after Baker reached into the day planner. Johnson told the officers that the defendant shot Baker when Baker reached into his pocket. Johnson refused to give a formal statement on the night of the incident, claiming that his attorney had advised him to give a written statement. However, when nearly two weeks had passed, Investigator Emmett Coleman contacted Johnson. At that time, Johnson gave a statement, in which he informed the officers that when Baker reached into the day planner, he saw a gun and he told the defendant to run.
During the trial, Johnson testified that on the night of the shooting, Baker became angry after being told that his entire deposit would not be refunded to him. Johnson testified that he heard Baker say, "I got something that'll make you give me all my God damned money back!" Johnson also testified that he then saw the tip of a "silver" gun barrel inside Baker's day planner and that he yelled to the defendant, "Run, Jamie, he has a gun!" Johnson testified that he heard gun shots after he started to run. Johnson also stated that on the night of the shooting, he told Winnsboro Police Officer Chris Shaw and Ace Smith about Baker having a gun, but "someone" must have picked it up.
*717 Ace Smith and Officer Shaw also testified during the trial. Smith stated that all Johnson said to him that night was, "Jamie shot him." Smith did not corroborate Johnson's claim that Johnson had told him that he saw a gun in Baker's planner that night. Officer Shaw testified that when he arrived on the scene, other law enforcement officers had taken the defendant to the sheriff's office, and Johnson told him that the defendant had shot Baker after Baker reached into his pocket. Johnson informed Officer Shaw that he had seen a weapon in Baker's possession on that night.
Deputy Lafayette Ainsworth testified that, while transporting the defendant to the sheriff's office, the defendant told him that he and Johnson had gone to Baker's apartment to collect the rent. According to Deputy Ainsworth, the defendant stated that Baker and his brother had gotten into a heated argument, that Baker went to pull something out of his black case, and that he shot him. Deputy Ainsworth testified that the defendant offered no other details about the shooting.
Assistant Police Chief Bruce McCarthy testified that Johnson stated that he and the defendant had gone to collect Baker's rent when they got in a heated argument and that the defendant shot Baker when Baker reached into his pocket. Officer Shaw and Assistant Chief McCarthy testified that Johnson did not mention Baker having a gun or a weapon and that he did not ask them to search the area for one. Assistant Chief McCarthy also testified that Johnson told him that he did not know the defendant had a gun before the shooting.
Franklin Parish Deputy Michael L. Jones testified that he searched the day planner that Baker had been carrying, and no weapon was found. Deputy Jones stated that Baker had no other bags or pouches in his possession that night. Deputy Jones also testified that he searched the area between the Brass/Smith home and the apartment and found no other evidence besides a trail of blood. Deputy Jones testified that Johnson showed them where the shooting occurred in the apartment parking lot and that they found the spent shell casings to confirm it.
Saundra Lee, who was visiting a friend at the Westwood Apartments on the night of the shooting, testified that she heard Farrington Johnson say that "Jamie shot that boy!" She did not mention hearing anything about Baker having a gun in his possession.
Katrina Baker, the victim's wife, testified that Baker took his day planner with him when he left the apartment to talk to Johnson. According to Mrs. Baker, her husband kept bills and recorded the family's financial matters in the planner. Mrs. Baker also testified that she never knew of her husband owning a gun and that she would have known if he had.
The only evidence to corroborate Johnson's claim that Baker had a gun at the time of the shooting came from the testimony of Jimmy Don Miller, a resident of Westwood Apartments. Miller testified that he saw a "dark-colored" gun in Baker's right hand as he was running toward the Brass/Smith house, but that Baker no longer had it after he ran through a hedge close to the house. Miller testified that he stayed by the apartments and did not go into the yard of the Brass/Smith house. However, Carolyn Brass testified that she remembered Miller being in her yard after the shooting.
At the conclusion of the testimony, the trial court instructed the jury with regard to the definitions of second degree murder, manslaughter and negligent homicide. The jury was informed that manslaughter *718 and negligent homicide were responsive verdicts to second degree murder. Thereafter, the trial court defined justifiable homicide and informed the jury that the state bore the burden of proving, beyond a reasonable doubt, that the homicide was not committed in self-defense.
After reviewing the record in its entirety, we find that a rational fact-finder could have found, beyond a reasonable doubt, that there was no gun inside Baker's day planner, and the defendant did not act in self-defense. The state presented evidence that Baker did not own a gun, and there was conflicting defense testimony with regard to the appearance/color of Baker's alleged gun. Further, the testimony from law enforcement officers that no one mentioned that Baker had a gun in his possession until almost two weeks after the shooting may have caused the jury to view the defense testimony as not credible. As the triers of fact, the jurors were free to accept or reject, in whole or in part, the testimony of any witness. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Although Johnson's testimony might suggest that the defendant may have believed that he and his brother were in danger, the issue is whether a reasonable person would have believed that he was in immediate danger of death or serious physical injury and that the killing was necessary to save himself or others from that danger.
In State v. Garner, supra, the defendant and the victim engaged in a fist fight. The defendant testified that the victim initiated the fight when the victim grabbed him from behind, turned him around and hit him in the mouth. The defendant, in turn, struck the victim numerous times. The victim was unconscious when the defendant left the scene and later died from his injuries. An eyewitness to the incident testified that the victim struck the defendant on his arm with a lug wrench, and the defendant hit the victim two or three times. This court, on rehearing, affirmed the defendant's manslaughter conviction, finding that there was "little or no evidence to support a justifiable homicide defense." Id. at 884. This court noted that even if the victim had struck the defendant with a weapon, he caused little or no injuries. Thus, the state met its burden of proving that the defendant did not reasonably believe that he was in imminent danger of losing his life or receiving great bodily harm, and the defendant's actions were not necessary to prevent great bodily harm to himself by the victim.
In a case factually similar to the instant case, State v. Ducre, 596 So.2d 1372 (La. App. 1 Cir.1992), writ denied, 600 So.2d 637 (La.1992), the defendant and the victim had an argument in the parking lot of a bar. The defendant drove away in his vehicle, and the victim went inside the bar. The defendant returned, pulled a gun and shot the victim one time in the chest. Witnesses testified that the victim did not own a gun and was not known to carry a weapon. However, one witness testified that after the shooting, he saw the victim's former girlfriend retrieve a gun from his pocket. The court found that the victim's actions in being the verbal aggressor and making several hand motions would not place a reasonable person in fear of death or great bodily injury.
Similarly, in this case, the defendant never mentioned to the police officers that he thought the victim was armed with a weapon, and it is clear that the jury did not believe either Johnson or Miller when they testified that Baker was carrying a gun. A reasonable fact-finder could have found that the defendant did not reasonably believe that he was in imminent danger *719 of losing his life or receiving great bodily harm. Additionally, the jury could have found, beyond a reasonable doubt, that Baker's action of reaching into his day planner would not have placed a reasonable person in fear of death or great bodily harm, and the defendant's response shooting the unarmed Baker three timeswas not necessary to prevent death or great bodily harm to him or his brother. This determination was reasonably supported by the evidence, viewed in a light most favorable to the prosecution. Accordingly, we find that the state presented sufficient evidence, from which a rational fact-finder could have determined that defendant was not acting in self-defense or defense of others when he intentionally shot and killed Baker. This assignment is without merit.
Motion in Limine
The defendant argues that the trial court improperly granted the state's motion in limine to exclude the testimony of defense expert witnesses, who would have testified as to the effects of cocaine and alcohol. The defendant sought to use the expert testimony to explain the victim's behavior as part of the defendant's self-defense claim.
Both the Sixth Amendment to the United States Constitution and Article I, § 16 of the Louisiana Constitution guarantee an accused in a criminal prosecution the right to present a defense. Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Van Winkle, XXXX-XXXX (La.6/30/95), 658 So.2d 198; State v. Tauzin, 38,436 (La.App. 2d Cir.8/18/04), 880 So.2d 157. However, this right to present evidence does not require the trial court to permit the introduction of evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. See LSA-C.E. art. 403; State v. Mosby, 595 So.2d 1135 (La.1992).
In this case, the defense experts' opinions were based upon the toxicology results contained within the autopsy report, which reportedly stated that Baker had alcohol and cocaine in his system at the time of his death. The defendant claims that the toxicology results should not be excluded under LSA-C.Cr.P. art. 105 as hearsay because the death of the forensic pathologist, Dr. George McCormick, should not impair his ability to present a defense. The state contends the expert testimony was properly excluded because it was based upon facts contained in the autopsy report, which is admissible only to prove death and the cause of death pursuant to LSA-C.Cr.P. art. 105.
We agree. In homicide cases, the coroner's report shall certify the cause of death. LSA-C.Cr.P. art. 105. A coroner's report shall be competent evidence of death and the cause thereof, but not of any other fact. Id.; State v. Green, 2002-2479 (La.6/6/03), 845 So.2d 1076; State v. Kelly, 375 So.2d 1344 (La.1979); State v. Rhodes, 29,207 (La.App. 2d Cir.1/22/97), 688 So.2d 628, writ denied, XXXX-XXXX (La.9/26/97), 701 So.2d 980. The coroner or one of the coroner's deputies may testify with regard to the victim's death or the cause thereof, even where the testifying witness did not perform the autopsy or prepare the report. State v. Rhodes, supra.
In this case, the defendant's argument that Dr. McCormick's death impaired his ability to present a defense is without merit. Although Dr. McCormick performed the autopsy and prepared the report, it would have been permissible for a coroner's deputy to testify with regard to Baker's cause of death. Even if Dr. McCormick had been alive to testify, he would *720 have been prohibited, pursuant to LSA-C.Cr.P. art. 105, from testifying with regard to Baker's toxicology results, since the cause of death was the injuries Baker sustained as a result of the gunshot wounds. This argument lacks merit.
The defendant also argues that evidence of an overt act by the victim justifies the introduction of the expert testimony, under LSA-C.E. art. 404(a)(2), to bolster his self-defense claim. Conversely, the state argues that the trial court properly excluded the expert testimony because evidence of the victim's cocaine and alcohol use before death is improper character evidence under LSA-C.E. art. 404(a)(2).[2]
When a defendant attempts to present evidence of a victim's character, it must be for a relevant purpose, such as self-defense. See LSA-C.E. art. 401. Thus, character evidence that paints the victim as a bad person deserving his fate of death at the hands of the defendant is prohibited by LSA-C.E. art. 404. State v. Wade, 33,121 (La.App. 2d Cir.5/15/00), 758 So.2d 987, 996, writ denied, 2000-2160 (La.9/28/02), 797 So.2d 684.
Evidence of the dangerous character of the victim is admissible only if the accused first produces evidence that at the time of the incident, the victim made a hostile demonstration or committed an overt act against the accused of such character that would have created in the mind of a reasonable person a belief that he was in immediate danger of losing life or suffering great bodily harm. See State v. Scott, 31,379 (La.App. 2d Cir.10/28/98), 720 So.2d 415, 424, writ denied, XXXX-XXXX (La.5/14/99), 741 So.2d 664 (citing State v. Gantt, 616 So.2d 1300 (La.App. 2d Cir. 1993)). An "overt act" within the meaning of LSA-C.E. art. 404 is "any act of the victim which manifests in the mind of a reasonable person a present intention on his part to kill or do great bodily harm." See State v. Scott, 720 So.2d at 424 (quoting State v. Demery, 28,396 (La.App. 2d Cir.8/21/96), 679 So.2d 518).
Before being entitled to present evidence of the victim's character, the defendant must present "appreciable evidence" of the overt act. See State v. Woodhead, XXXX-XXXX (La.App. 5th Cir.1/27/04), 866 So.2d 995, 1001, writ denied, XXXX-XXXX (La.7/2/04), 877 So.2d 144 (citing LSA-C.Cr.P. art. 404; State v. Edwards, 420 So.2d 663 (La.1982)). Once the defendant has presented appreciable evidence of the overt act, "the trial court cannot exercise its discretion to infringe on the fact-determination function of the jury by disbelieving this defense testimony and thus, deny the accused a defense permitted by law." See State v. Woodhead, 866 So.2d at 1002 (quoting State v. Lee, 331 So.2d 455, 459 (La.1975)). Thus, the threshold inquiry is whether the defendant presented evidence of "hostile demonstration or an overt act on the part of the victim."
*721 In State v. Cavalier, 421 So.2d 892 (La. 1982), after a brief conversation with the defendant, the victim walked toward the defendant and reached behind his back into the waistband of his pants. The defendant immediately drew a gun and shot the victim. Witnesses for the defense testified that after the shooting, the victim's cousin removed the gun from his body. However, the state's witnesses testified that the victim did not have a gun in his possession, and he did not own one. The Louisiana Supreme Court upheld the defendant's second degree murder conviction, finding that the victim's act of walking across the street and reaching behind his back did not constitute appreciable evidence of an overt hostile act that would create a reasonable belief of the victim's intent to kill or do great bodily harm.
In State v. Woodhead, supra, the defendant gave a statement to police officers in which he claimed that he killed the victim in self-defense when the victim lunged at him with a knife. The defendant further contended "an acquaintance" had told the defendant that the victim "was of a dangerous character," particularly when he was under the influence of alcohol or drugs. The trial court denied the defendant's motion to introduce evidence of the victim's dangerous character and granted the state's motion to exclude evidence of cocaine detected in the victim's body. The court of appeal upheld the trial court's decision, finding that the defendant's statement alone did not constitute appreciable evidence of an overt act, especially since it was not corroborated by other trial testimony.
Similarly, in State v. Jones, 1999-798 (La.App. 5th Cir.11/10/99), 748 So.2d 1176, writ denied, XXXX-XXXX (La.12/8/00), 775 So.2d 1076, the defendant testified that he was acting in self-defense when he killed the victim. The trial court denied the defendant's request to present evidence of the victim's prior felony convictions to show his propensity for violence. The appellate court upheld the trial court's decision, noting that the defendant's testimony was controverted by the testimony of the eyewitnesses to the murder, who stated that the victim did not hit the defendant until after the defendant had stabbed him several times. The court concluded that the defendant failed to carry his burden of showing that the victim made a hostile demonstration or committed an overt act against him.
In this case, as stated above, on the night of the shooting, both the defendant and Johnson stated that the defendant shot Baker after Baker attempted to remove something from his day planner. No gun was found in the day planner or at or near the scene of the shooting. No gun was mentioned until nearly two weeks after the shooting. Neither the defendant nor Johnson stated that he saw a gun or any other weapon in the defendant's hand. The only acts committed by Baker were the acts of arguing with Johnson and reaching into his day planner.
We find that the defendant failed to present appreciable evidence that Baker committed an overt act that would make a reasonable person fear immediate death or serious physical injury. Accordingly, we find that the trial court did not abuse its discretion in finding that LSA-C.E. art. 404 precluded evidence of the victim's bad character.

CONCLUSION
For the reasons set forth herein, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 14:31 defines manslaughter, in pertinent part, as follows:

A. Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
[2] LSA-C.E. art. 404 provides, in pertinent part:

A. Character evidence generally. Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
* * *
(2) Character of victim. (a) Except as provided in Article 412, evidence of a pertinent trait of character, such as a moral quality, of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence; provided that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of his dangerous character is not admissible; . . .
* * *