BROWN, Chief Judge.
 

 11 Defendant’s, Jason Ray Davis’s, only assignment of error is that the evidence presented was insufficient to support the jury’s verdict of second degree murder. He claims that the killing occurred in self-defense, and he argues that the record reveals a reasonable doubt concerning his guilt. We affirm.
 

 Facts
 

 The victim, 66-year-old Joe Lee Jones, was married to Elaine Jones for 48 years and was the father of four children and the grandfather of seven children on June 29, 2009, the date of his death. Jones worked for James Construction Company as a supervisor of bridge construction. He did not believe in or carry personal credit cards. He carried substantial cash on his person, in amounts ranging from $300 to $1,000. Jones also kept a wooden box containing cash in his truck. Jones and his wife were traveling to Virginia to visit two of his children and some of their grandchildren that week, so he had withdrawn additional money from their joint account for their trip.
 

 At 6:00 a.m. on June 30, 2009, the Oua-chita Parish Sheriffs Office was notified that a white four door GMC truck with a trailer attached was blocking a wash bay at Clean Gene’s Car Wash on La. Hwy. 139 in Swartz, Louisiana. After learning that the owner of the truck was Joe Lee Jones, officers contacted Mrs. Jones, who found out that her husband had not gone to work as he usually did. Her calls to his cell phone went unanswered. Mrs. Jones drove to the car wash, but the officers, having discovered what ^appeared to be blood in her husband’s truck, would not let her near the vehicle.
 

 Next to Clean Gene’s is Dave’s Chevron. Both businesses had surveillance cameras and had recorded activities from the previous evening. The surveillance tapes and officers’ investigation revealed that the victim, Joe Lee Jones, arrived at Dave’s Chevron on June 29, 2009, at approximately 8:26 p.m. Jones spoke with two acquaintances inside the store and bought a bag of Fritos. Defendant arrived a few minutes later. He entered the store twice to get Jones to leave with him, appearing to be pushy and in a hurry.
 

 At approximately 8:36 p.m. the victim and defendant left Dave’s Chevron in the victim’s truck, traveling down the Swartz-Fairbanks Road. Approximately 30 minutes later, defendant returned alone, driving the victim’s truck. He parked Jones’s truck in one of the wash bays at Clean Gene’s, then washed his arms, legs, and body. Defendant also searched through the truck with a flashlight before locking the vehicle. Defendant then walked to his own truck which was parked at Dave’s Chevron and drove off in the same direction he had gone with the victim less than an hour previously.
 

 
 *540
 
 The victim’s body was found in a ravine running beside a gravel road just off the Swartz-Fairbanks Road, approximately eight miles from Dave’s Chevron. Defendant’s family lived just off the Swartz-Fairbanks Road, between the gas station and the crime scene. Jones’s wallet, money box, keys and cell phone were never recovered. The victim’s cell phone was 13used after his death to call defendant’s girlfriend and another party. Defendant was identified from the video recordings. When arrested by the officers, defendant claimed that the victim made an inappropriate remark or movement so defendant struck him several times and knocked him down. Defendant claimed to have left the victim at the car wash.
 

 Sergeant Daryl Giddens said that Jones’s body was found approximately eight miles from the Chevron station and car wash down Swartz-Fairbanks Road. Officers searched Jones’s truck and were unable to locate his keys or wallet. They were also unable to find the money boxes that Jones kept in his truck. A khaki baseball cap with a dark colored brim was found with the victim’s body. The shirt defendant was wearing in the videotape recordings was recovered from the floorboard of Jones’s pickup truck. A tool found on the driver’s side floorboard was later identified as an ice scraper. A filet knife was found by the victim’s body.
 

 Cassandra Hernandez with the Northeast Louisiana Crime Lab testified that the DNA on most of the items presented to her, a filet knife, scraper tool, blood from a baseball cap and blood from a t-shirt, were consistent with and matched the DNA of the victim. Dr. Frank Peretti, forensic pathologist, testified as to the numerous injuries sustained by Jones, which included stabbing wounds, cutting wounds and blunt force injuries. Dr. Peretti noted the severity of the victim’s injuries, which included a broken left jaw, cluster wounds to the head, a pierced liver and cut throat. Dr. Peretti also observed that a number of these injuries were inflicted while the victim was outside of the truck.
 

 14After he left the car wash, defendant went to his parents’ house on Swartz-Fairbanks Road. According to defendant, he did not tell his parents what had happened — he did not even go into the house. The next day, he had dinner with his parents and brother and again, did not mention what had happened the previous night.
 

 On the night of the victim’s death, defendant told his girlfriend, LaKenya Moore, that he had gone to a job site with Jones, which is why he could not pick her up from work. Defendant told Ms. Moore that he had stabbed a man at the “Hurry Back” convenience store on Louisville Avenue because he had caught the man going through his truck in the parking lot. Ms. Moore suggested that defendant go to the police and tell them what had happened because to her, it sounded like self-defense. Defendant told Ms. Moore that he went back to the scene and moved the body. At trial, however, he denied telling Ms. Moore that he had moved the body and testified that he did not move Jones’s body. However, Dr. Peretti testified that the victim had lain on his back after his death for several hours before being moved to his stomach.
 

 At trial, defendant related that the victim pulled a knife (the murder weapon) on him and tried to force defendant to perform oral sex. In self-defense, defendant beat and stabbed the -victim to death. This was the first time that defendant raised the issue of self-defense.
 

 On July 28, 2009, defendant, Jason Ray Davis, was charged by grand jury indictment with second degree murder in violation of La. R.S. 14:80.1. On June 28, 2010,
 
 *541
 
 after a jury trial, defendant was found guilty as charged [ 5by a vote of eleven to one. On August 23, 2010, defendant filed a motion for a post-verdict judgment of acquittal which was denied. On August 24, 2010, defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. He was also ordered to pay $12,000 in restitution to the victim’s family. This appeal ensued. We affirm.
 

 Discussion
 

 Louisiana Revised Statute 14:30.1(A) provides in pertinent part that second degree murder is the killing of a human being: (1) when the offender has a specific intent to kill or to inflict great bodily harm; or (2) when the offender is engaged in the perpetration or attempted perpetration of ... armed robbery, first degree robbery, second degree robbery, [or] simple robbery, ... even though he has no intent to kill or to inflict great bodily harm.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.05/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.01/09/08), 974 So.2d 181,
 
 writ denied,
 
 08-0499 (La.11/14/08), 996 So.2d 1086.
 

 The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. RA reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.02/25/09), 3 So.3d 685;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.05/09/07), 956 So.2d 758,
 
 writ denied,
 
 07-1209 (La.12/14/07), 970 So.2d 529.
 

 A homicide is justifiable when committed in self-defense by one who reasonably believes he is in imminent danger of losing his life or receiving great bodily harm and the killing is necessary to save himself from that danger. La. R.S. 14:20(A)(1). A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw. La. R.S. 14:21.
 

 When the defendant challenges the sufficiency of the evidence in such a case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others.
 
 State v. Matthews,
 
 464 So.2d 298 (La.1985);
 
 State v. Palmer,
 
 45,627 (La.App.2d Cir.01/26/11), 57 So.3d 1099.
 

 At trial, defendant took the stand in his defense and admitted that he killed Joe Lee Jones by stabbing him with a knife. Dr. Peretti testified that the victim was first stabbed in the abdomen, and that his liver was pierced. The victim’s throat was cut, he suffered multiple stab wounds on both sides of his head, and he was stabbed through his left collarbone. Dr. Peretti also ^testified that the victim’s left jaw was broken, and he was severely beaten. According to the forensic pathologist, the victim sustained cluster wounds on his head, indicating his inability to struggle or defend himself. When arrested the next day, defendant had no wounds except for two small scratches. From this evidence,
 
 *542
 
 the jury could have found that defendant had the specific intent to kill or inflict great bodily harm upon Joe Lee Jones. Therefore, the only question remaining for the jury to decide was whether the evidence sufficiently negated defendant’s claim of self-defense. The jury determined that it did. In viewing the evidence in a light most favorable to the state, the jury could have found that defendant did not act in self-defense. In addition to evidence indicating the severity of the attack upon Jones and the lack of injuries to defendant, the evidence established that at the time of the incident, the victim was a slim, frail 66-year-old man with a heart condition, while defendant was a 6'2", 210 lb. 22-year-old man. There is ample evidence to support the jury’s conclusion.
 

 Blood was found inside and outside of the victim’s truck, smeared on the rear fender and spattered on the driver’s side door jamb. Video surveillance cameras recorded defendant with Jones before the murder, and the encounter was corroborated by eyewitnesses at the scene. According to them, defendant appeared nervous, while Jones seemed relaxed. The recordings show defendant returning to the car wash in the victim’s truck to wash himself off. Defendant tried to hide evidence in a dumpster, and he did not report the crime to the police. Prior to his arrest, he had two different versions of the incident. Defendant admitted at trial that both |saccounts were lies. According to Dr. Peretti, the lividity in Jones’s body showed that it was moved a few hours after the murder. Ms. Moore and Ms. Johnson testified that defendant left their apartment more than once the night of the murder. Ms. Moore testified that defendant told her he moved the body. He took multiple showers that night, presumably after moving said body.
 

 Jones was known to carry large amounts of cash. He had a particularly large amount of cash in preparation for a trip to Virginia. Defendant has a history of theft, having previously been convicted of simple robbery and theft. Although Jones’s body was found, his wallet and money box were never recovered. Defendant admitted that he took Jones’s keys and phone.
 

 Multiple witnesses said that Jones was a gentleman. Regarding his character, witnesses observed that Jones was neither violent nor known to carry a large knife. The murder weapon was not similar to the other knives in the Jones’s household. No one had previously seen the knife in his truck or at his workplace.
 

 In his testimony, defendant could not explain how a 66-year-old man with a heart condition could pull a 6'2", 210 lb. man across his lap and out the door of the truck. Defendant could not account for the blood on the driver’s side door jamb, and his story did not make reference to the blood on the rear fender. As noted above, defendant had only two minor scratches when the police found him, and he did not explain his periodic absences from the apartment the night of the murder.
 

 | nDefendant’s self-serving testimony was uncorroborated and contrary to the direct evidence presented by the state. The jury was given the opportunity to weigh this testimony against the state’s evidence, and this court will accord great deference to the jury’s credibility determination.
 

 Conclusion
 

 Defendant’s conviction is AFFIRMED.
 

 APPLICATION FOR REHEARING
 

 Before BROWN, CARAWAY, PEATROSS, DREW and LOLLEY, JJ.
 

 Rehearing denied.