DREW, J.
11Derrick Edwards was convicted of second degree murder, in violation of La. R.S. 14:30.1. He was sentenced to life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence.
He appeals, urging two assignments of error. We affirm.
FACTS
Derrick Edwards and Patricia Cathron are the parents of Shanderricka Edwards. When Shanderricka was three years old, her father abandoned her and had little to do with her for the next 14 years.
On June 4, 2011, Shanderricka was 17 years of age. She lived in Shreveport in a duplex with her mother.
Tomika Adams, age 30, resided in the upstairs apartment of the duplex. In the preceding few months, both Tomika and Shanderricka had been involved with 27-year-old Tyrone Miles, a point of contention between the two women.
Katrina Brown lived two houses from the duplex. Diane Priest lived in a house next to Katrina, three houses from the duplex. Tomika’s mother, Everlerna Adams, lived across the street diagonally. The defendant was a very personal friend with Lavonne Bell, who resided nearby.
I.The Initial Argument
In the early afternoon of June 4, 2011, Shanderricka and Tomika argued about:
• a DVD player that Everlerna had loaned to Shanderricka; and
• Shanderricka’s belief that Miles had gone back with Tomika.
Diane observed the argument from her front porch, testifying that its | duration was about a half hour. Lavonne testified that Tomika refused to fight Shanderricka. The police were called and both women were handcuffed, but not arrested. Lavonne called the defendant to tell him that his daughter had been involved in an argument and was in handcuffs.
The defendant arrived and spoke with the officers. He and Shanderricka discussed the argument, but were not angry with each other at that time.
II.The Argument Between Shanderricka’s Parents
The defendant and Patricia argued about his disapproval of the relationship between Shanderricka and Miles. Patricia and Shanderricka returned to the duplex. Miles later joined them. The defendant remained in the street, still angry. He asked Lavonne and Tomika to take his truck and go purchase beer. They did so.
After they left, the defendant was in the street in front of the Browns’ house, talking to a crowd of people, including Diane. Lavonne testified that when she left, the defendant was not angry or upset.
III.The Father-Daughter Fight
Shanderricka and her young sister walked by the group of people, when she heard her father saying that he was going to have Lavonne fight Patricia.[1] Shander-ricka told him that he couldn’t “do that” but that he could “whoop” her. Shander-ricka asked her father why he was talking about their family business in public. Shanderricka later said that he must have thought she was disrespectful.
| ..¡Shanderricka was holding her two- or three-year-old sister when the argument began. She put the child down and Katrina picked up the child. Shanderricka and *515 her father began physically fighting. The defendant, age 37, grabbed his daughter, age 17, by her throat and began hitting her in the face with his fists. Shanderric-ka fought back, but the defendant pulled her to the ground by her hairpiece.
Patricia swung her crutch at the defendant, but missed. After the fight, Miles helped Shanderricka and Patricia up, and walked them back to the duplex.
Shanderricka identified photographs showing scratches on her neck and bruises on her face.
Everlerna testified that she saw the defendant hit his daughter, but said the marks on Shanderricka’s face and neck were caused by Patricia’s crutch.
IY. Invitation to a Killing
After the fight, the defendant followed Miles, Shanderricka, and Patricia down the street, challenging anyone to “come out to the street and get it.”
Shanderricka testified that:
• her father told Miles that he would “bust his butt”;
• she told Miles not to worry about her father;
• her father continued to taunt and provoke Miles;
• she tried to restrain Miles, but he broke away and went into the street;
• it was dark, with minimal to no street lights working;
It* Miles, age 27, and the defendant began fist-fighting;[2]
• the fight lasted two to three minutes;
• she never saw Miles with a weapon;
• her father normally carried a pocket knife in his pants pocket; and
• she never saw the defendant stab Miles, though she saw Miles step backward and say, “Man, you stabbed me.”
No one testified as to seeing the knife during the fight. Patricia saw Miles stagger into her front yard, but did not know that he had been stabbed until he collapsed on the floor of the duplex.
Diane heard someone say, “he didn’t have to stab him.”
Shanderricka further testified that:
• Miles ran toward the duplex as the defendant remained in the street, yelling;
• Miles left a bloody handprint on the door of a vehicle parked in the yard;
• he entered the duplex and fell to the floor with blood pouring from his side;
• the photograph of the blood inside the doorway was accurate; and
• she called 911, but Miles lost consciousness before EMS arrived.
The defendant also called 911, reporting that he stabbed Miles. Lavonne said the defendant could have come to her home instead of fighting.
V. The Investigation
Corporal Jennie Taylor, of the Shreveport Police Department, who was the first officer to arrive at the scene, testified that:
h* as she exited her unit, the defendant blurted out that he had stabbed Miles;
• she detained the defendant in her vehicle;
• she made contact with Miles and assisted with crowd control;
• she asked the defendant for the knife and he gave it to her;
• the knife was later turned over to a crime scene investigator; and
• the knife shown her in court was the one received from the defendant.
*516 Sergeant Danny Duddy, supervisor of the Shreveport Police Department crime scene unit, was the on-call crime scene investigator on June 4, 2011. Duddy identified photographs that he took of the crime scene and the participants. He received an open pocketknife from Corporal Taylor.
Dr. Long Jin, a forensic pathologist at LSU Health Sciences Center, conducted an autopsy the next day, with these findings:
• cause of death was determined to be two sharp force wounds to the chest;
• manner of death was determined to be homicide;
• one wound was a stab wound, located slightly to the left of the middle chest;
• that wound penetrated the right ventricle of the heart;
• the right ventricle is easily penetrated by a two-inch deep jab with a knife;
• the second wound was also a stab wound to the heart;
• both wounds were administered with a knife or sharp object;
• either wound would have been fatal;
• Miles bled to death as a result of his wounds;
JkJJ it would have taken a few minutes for Miles to die from his wounds;
• there was a possible defensive wound on the right elbow; and
• there was a slash wound to the right chest.
Trial started on January 28, 2014. The jury’s verdict came two days later.
No post-trial motions were filed.
VI. This Appeal

Improper Use of Grand Jury Testimony

This listed assignment was not argued on appeal. Nonetheless, we have examined the trial court’s precise restrictions on the use of the previous contrary sworn testimony of several witnesses. Without exception, the trial court’s legal rulings on this issue were exemplary. Moreover, the overwhelming evidence renders any perceived errors harmless beyond a reasonable doubt.

Sufficiency

The defendant attacks his conviction, arguing that:
• the state did not prove that he had the specific intent to Mil the victim; .
• the state failed to produce a witness who saw him stab the victim;
• he acted in self-defense, having no means of retreat from the aggressor; and
• at most, these facts would sustain a manslaughter conviction.[3]
The state argues that the defensive wounds present on the victim’s 17body, along with penetrating wounds to the heart, indicate the defendant’s specific intent to Mil. The state further argues that the defendant was the aggressor and is not entitled to claim self-defense. The state asserts that the evidence reflects that the defendant stabbed an unarmed victim twice in the heart during a fight, and that the defendant was the aggressor and made no attempt to withdraw.
Our law on appellate review of claims of evidentiary insufficiency is well settled,[4] particularly in cases with factual similarities to this prosecution.
*518 hOur law on justifiable homicide is also well settled.[5]
19This record provides overwhelming evidence of the stabbing, including a confession from the defendant and a dying declaration from the victim.
Dr. Long Jin testified that Miles died as a result of two penetrating stab wounds to *519 the chest, each of which pierced the right ventricle of his heart.
The defendant confessed to Corporal Taylor at the scene and gave her the knife he used to stab Miles. The state proved beyond a reasonable doubt that the defendant inflicted the fatal stab wounds.
The defendant’s actions prove that he had the specific intent “to kill or to inflict great bodily harm,” as required by La. R.S. 14:30.1(A)(1). It 110was not unreasonable for a trier of fact to conclude that he actively desired the consequences of his actions, ie., the death or great bodily harm of the victim.
The defendant claims that he acted in self-defense, as he reasonably believed that killing was necessary to defend himself.
The evidence reflects that this altercation began as a fist-fight and that it was the defendant who elevated the fight with the use of a weapon. There was no evidence presented to establish that the defendant reasonably believed that he was in imminent danger of losing his life or that killing Miles was necessary to save his own life. Even Lavonne, a defense witness, confirmed that he could have retreated to her house, rather than provoke the deadly struggle.
The defendant was clearly the aggressor here.[6] No evidence was presented that he attempted to withdraw from the situation' prior to his use of deadly force.
There was nothing in the testimony of the witnesses which rendered their testimony implausible, especially on the important points of the defendant being the aggressor and never withdrawing from the conflict with Miles.
This court does not assess the credibility of witnesses or reweigh evidence. Great deference is given to the jury’s determinations of credibility.
In When viewing the evidence in the light most favorable to the prosecution, the trier of fact could have found, beyond a reasonable doubt, that this senseless murder was not committed in self-defense.
Further, a rational trier of fact could have found the essential elements of the crime of second degree murder were proven beyond a reasonable doubt.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. Patricia, the mother of Shanderricka, was an amputee.

. Katrina and Patricia also witnessed Miles walk into the street and fight with the defendant. Patricia saw the men swinging at each other in a side-to-side motion.

. In its charge, the trial court correctly advised the jury as to the law applicable to this case, including: (1) the required elements to proved the charged crime and any responsive verdicts; (2) the law of specific intent; (3) self-defense; and (4) the aggressor doctrine. The jury deliberated over four hours.

. A claim of insufficient evidence is determined by whether, on the entire record, a *517 rational trier of fact could find the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). On review, the appellate court considers whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Crossley, 48,149 (La.App.2d Cir.6/26/13), 117 So.3d 585, writ denied, 2013-1798 (La.2/14/14), 132 So.3d 410. The appellate court does not assess the credibility of witnesses or reweigh evidence, and gives great deference to the jury's decision to accept or reject the testimony of a witness or the weight the jury gives to direct or circumstantial evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La. 12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010).
Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La. 1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438. State v. Lilly, supra; State v. Robinson, 47,437 (La.App.2d Cir.11/14/12), 106 So.3d 1028, writ denied, 2012-2658 (La.5/17/13), 117 So.3d 918.
The trier of fact is charged with weighing the credibility of this evidence and on review, the same standard as in Jackson v. Virginia is applied, giving great deference to the fact finder's conclusions. When jurors reasonably reject the hypothesis of innocence advanced by a defendant, the hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Sosa, 2005-0213 (La. 1/19/06), 921 So.2d 94; State v. Captville, 82-2206 (La.2/27/84), 448 So.2d 676.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Glover, 47,311 (La.App.2d Cir. 10/10/12), 106 So.3d 129, writ denied, 2012-2667 (La.5/24/13), 116 So.3d 659; State v. Speed, 43,786 (La.App.2d Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La. 1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Woodard, 47,286 (La.App.2d Cir.10/3/12), 107 So.3d 70, writ denied, 2012-2371 (La.4/26/13), 112 So.3d 837.
A victim’s or witness’s testimony alone is usually sufficient to support the verdict, as appellate courts will not second-guess the credibility determinations of the fact finder beyond the constitutional standard of sufficiency. State v. Davis, 02-1043 (La.6/27/03), 848 So.2d 557. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the fact finder, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869 (La.4/14/04), 874 So.2d 66.

Applicable Law-Second Degree Murder, La. R.S. 14:30.1

Second degree murder is defined as the killing of a human being “[wjhen the offender has a specific intent to kill or to inflict great bodily harm.” La. R.S. 14:30.1(A)(1). Specific intent is the state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied, 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990); State v. Davies, 35,783 (La.App.2d Cir.4/05/02), 813 So.2d 1262, writ denied, 2002-1564 (La.5/9/03), 843 So.2d 389, citing La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Draughn, 2005-1825 (La.01/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007).
The stabbing of the victim in the chest with a knife is such an act that "indicates a specific intent to kill or to inflict great bodily *518 harm." State v. Tran, 1998-2812 (La.App. 1 Cir. 11/5/99), 743 So.2d 1275, 1291, writ denied, 1999-3380 (La.5/26/00), 762 So.2d 1101. In State v. Ruffins, 597 So.2d 171 (La.App. 2d Cir. 1992), this court held that evidence showing that the defendant intentionally thrust a knife blade five inches into a victim’s chest was sufficient to prove that the defendant had the specific intent to kill or at least inflict great bodily harm. Likewise, in State v. Martinez, 09-740 (La.App. 5 Cir. 3/23/10), 38 So.3d 926, the court held that stabbing a victim multiple times, even if the deepest wound inflicted was not life threatening, was an act in furtherance of the intent to kill'.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La. 1982). In reviewing the correctness of such a determination, the court should review the evidence in a light most favorable to the prosecution and must determine if the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, supra; State v. Huizar, supra.

. La. R.S. 14:20 Justifiable homicide, provides, in pertinent part:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.
(2) When committed for the purpose of preventing a violent or forcible felony involving danger to life or of great bodily harm by one who reasonably believes that such an offense is about to be committed and that such action is necessary for its prevention. The circumstances must be sufficient to excite the fear of a reasonable person that there would be serious danger to his own life or person if he attempted to prevent the felony without the killing.
When self-defense is raised as an issue by a defendant, the state has the burden of proving, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Johnson, 41,428 (La.App.2d Cir.9/27/06), 940 So.2d .711, 716, writ denied, 2006-2615 (La.5/18/07), 957 So.2d 150; State v. Garner, 39,731 (La.App. 2d Cir.9/08/05), 913 So.2d 874, writ denied, 2005-2567 (La.5/26/06), 930 So.2d 19. Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary include the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant’s knowledge of the assailant’s bad character. State v. Johnson, supra. The possibility of retreat may not be considered as a factor in determining whether or not the defendant had a reasonable belief that deadly force was reasonable and apparently necessary. La. R.S. 14:20(D).
When the defendant challenges the sufficiency of the evidence in a self-defense case, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense or in the defense of others. State v. Davis, 46,267 (La.App.2d Cir.5/18/11), 69 So.3d 538, writ denied, 2011-1561 (La.1/13/12), 77 So.3d 952. There is ample jurisprudence suggesting that the use of deadly force against an unarmed victim, even in the midst of a physical altercation, may be an excessive use of force. State v. Ingram, 45,546 (La.App.2d Cir.6/22/11), 71 So.3d 437, writ denied, 2011-1630 (La.1/11/12), 77 So.3d 947; State v. Fields, 38,496 (La.App.2d Cir.6/23/04), 877 So.2d 202, writ denied, 2004-1865 (La.11/24/04), 888 So.2d 229.
A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he withdraws from the conflict in good faith. La. R.S. 14:21. Not only must the aggressor withdraw from the conflict, but the withdrawal must be in such a way that the other person "knows or should know” of the desire to withdraw. If the aggressor’s withdrawal is not made sufficiently known to his adversary, he is not eligible to claim the justification of self-defense for the homicide. State v. Wells, 2011-0744 (La.App. 4 Cir. 7/11/14), 156 So.3d 150.

. The defendant argues that Miles was the aggressor because he left the safety of the front yard to confront him. However, Miles, Shanderricka, and Patricia testified that they retreated after the initial fight between father and daughter. The defendant followed them, rather than end the conflict. Katrina, Patricia, and Shanderricka all testified that the defendant taunted Miles.