Judgment rendered March 1, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,874-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA            Appellee

versus

BRANDON CURTIS            Appellant
MCLAUGHLIN

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 367,253

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPELLATE PROJECT      Counsel for Appellant
By: Lieu T. Vo Clark

BRANDON CURTIS MCLAUGHLIN      Pro Se

JAMES E. STEWART, SR.      Counsel for Appellee
District Attorney

KODIE K. SMITH
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before PITMAN, HUNTER, and ELLENDER, JJ.

**PITMAN, C. J**.

Defendant Brandon Curtis McLaughlin was convicted by a unanimous jury of the charge of second degree murder of James Gonyer, in violation of La. R.S. 14:30.1. The trial court sentenced him to life in prison without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction and sentence. For the following reasons, we affirm.

## FACTS

At trial, the following evidence was adduced.

On the night of May 26, 2019, Defendant was at a home he shared with his fiancée, Lauren Green, located in Shreveport, Louisiana. They were having a small party. Among other partygoers were James Gonyer and his girlfriend, Cara Cowan. The couple spent the previous night at Defendant's home. Gonyer had been drinking over the course of the day but was not acting in a threatening way. The partygoers decided to play hide-and-seek, and Gonyer flirtatiously pulled the hair of another woman, which upset Cowan. The couple went into a bedroom and began arguing loudly. Another guest, Christopher Cobb, went into the bedroom to try to break up the argument but was unsuccessful.

Cowan testified that the bedroom where the argument ensued did not have a door but, instead, had a sleeping bag covering the opening, except for a small crack at the bottom along the floor. Cowan testified that she did not believe she was in danger from Gonyer and that she did not call for help. She stated that the argument was cooling down when Defendant came into the room armed with a gun and fired a single shot into the air mattress upon which she and Gonyer were sitting. They were shocked at this, and she said she thought, "What is going on?" After the first shot was fired, Cowan said

Gonyer asked Defendant, "Did you just shoot a gun in here at me and my old lady?"

Cowan further testified that after the first shot, Gonyer stood in shock in a corner and never raised his hands to Defendant and did not even walk toward him. Defendant then shot the unarmed Gonyer six times. Cowan stated that she saw Gonyer's body jerk when he was shot and his arm go up as if to protect himself. She stated that Defendant never gave a verbal warning before firing the gun. After Gonyer's body fell to the floor, she screamed at Defendant, "You shot him. You killed him. Call for help." She tried to pick up the victim, but it was then that she felt the "hole in his heart." She was very scared and tried to find her keys and phone so she could leave. As she was searching, she heard Defendant on the phone calling 911; and he asked her, "He hit you, right?" but she denied that Gonyer had hit her. She returned to the bedroom and Gonyer was "gurgling and trying to talk," and she told him to stop talking and that she was going to try to help him. She saw him take his last breath, and then she left.

Prior to cross-examination, the defense wanted to introduce evidence that Cowan and Gonyer previously had been involved in a domestic violence incident that resulted in reciprocal no contact orders. That incident occurred at the same house as the shooting, and Defendant witnessed it. Cowan was arrested for the incident and was charged; however, upon Gonyer's death, the charge was dismissed.[1] After considering the law concerning the admissibility of evidence of the character of the victim, the trial court concluded that the evidence was not admissible.

---

[1] This information is pertinent to Defendant's pro se assignment of error.

Byron Kennedy, another guest, testified that when Defendant went into the bedroom, he followed him. The sleeping bag covering the door fell when Defendant entered the room to confront the couple, and Kennedy had an unobstructed view of the bedroom. Kennedy saw Gonyer holding Cowan by the arms; but as soon as the first shot was fired, he released her. He stated that Gonyer's demeanor after the initial gunshot was that of being shocked rather than angry and that Defendant was the person who appeared to be angry. He testified that Gonyer was standing, holding a beer bottle, and that he placed the beer bottle on the dresser. He did not charge at, or even walk toward, Defendant before the shooting began again. Gonyer's body fell to the floor. Defendant shot Gonyer two more times and then pointed the gun at Kennedy, yelling for him and everyone else to leave the house.

Green, Defendant's girlfriend, testified that she was on the sofa while the couple was in the bedroom arguing. She stated that she heard Cowan telling Gonyer to "Stop" and "Take your hands off of me." She does not like confrontation and told Defendant that Gonyer would have to leave. Defendant stood up with a gun in his hand, pulled back the slide and walked to the bedroom. She went to stand at the front door where she had a partial view of the bedroom but could not see the couple. She stated that after Defendant fired the weapon the first time, she heard Gonyer questioning him about why he fired the gun and repeating, "You just shot a gun at me," and then she saw him begin walking toward Defendant. Gonyer had a beer bottle in his hand, which he placed on a dresser as he walked toward Defendant with a balled-up fist. She stated that his hands remained at his side and were not raised. She denied seeing Gonyer attempt to hit

3

Defendant. She stated that no verbal warnings were given and that Defendant did not appear to be scared before he fired the gun again.

Defendant testified on his own behalf. He stated that the couple in the bedroom were arguing very loudly, and his girlfriend told him that they had to leave. He picked up his gun and pulled back the slide to see if there was a bullet in the chamber, and a bullet ejected from the gun. He went to the bedroom and tried to interrupt the argument, but the couple would not respond to him and kept arguing. He saw Gonyer holding a large beer bottle and saw him push Cowan to the bed and then crouch beside her. Defendant stated he thought Gonyer had hit Cowan with the beer bottle and that was when he fired the warning shot into the mattress.

Defendant stated that Gonyer turned around to him with wide eyes and said, "You just shot a gun at me." Then Gonyer stood up and began walking across the room to him. Defendant testified that as Gonyer approached him, he walked backwards to maintain a distance between them. He was worried because Gonyer was holding the beer bottle, so he kept his finger on the trigger of the gun. When Gonyer placed the beer bottle on the dresser, he looked at Green for a second. When he turned back around, Gonyer had taken a step forward with his left leg and his arm was up. He panicked and shot Gonyer. He stated, "And when I drew up I started shooting and then I finished on the fully extend, and then when I saw him hit it was just—I freaked out even worse." He stated at that point, everything started becoming blurry. He backed out of the hallway, told one person to leave and then called 911.

Defendant further testified he went into the bedroom armed because he was uncomfortable with the situation he was entering into, and it made

4

him feel safer to have the gun because he was aware of the couple's history of domestic violence. He stated that from the sounds he heard coming from the room, he believed Gonyer was "cold-cocking" Cowan and hitting her with the beer bottle, but he never actually saw that occurring.

The unanimous jury returned a verdict of guilty as charged of second degree murder. On the date set for sentencing, Defendant filed a motion for post-verdict judgment of acquittal, a motion for downward departure from mandatory life without parole and a motion for new trial. The trial court denied all three motions. Defendant waived sentencing delays. The trial court considered factors found in La. C. Cr. P. art. 894.1 and then sentenced Defendant to life in prison without benefit of parole, probation or suspension of sentence. Defendant filed a motion to reconsider sentence, which was denied. Defendant appeals.

## DISCUSSION

*Sufficiency of the evidence*

Defendant's attorney argues that the evidence was insufficient to show Defendant was guilty of second degree murder. The evidence adduced at trial showed that after the warning shot was fired, Gonyer, who was already being abusive to his girlfriend, became enraged over Defendant firing the gun in their direction. Defendant saw Gonyer approaching him with a raised arm and claims he shot him in self-defense. Defendant also argues that he did not intend to kill Gonyer, but that once he panicked and pulled the trigger, the gun fired rapidly.

The state argues that the evidence is sufficient for the jury to have found Defendant guilty of second degree murder. Defendant took a gun into a bedroom where his friends were arguing and fired a "warning shot" when

5

they would not stop arguing. Gonyer was unarmed and, in fact, put down the beer bottle he was holding in his hand which would have been the only weapon he had at his disposal. Several witnesses stated that Gonyer was standing with his hands by his side when Defendant began shooting him. He continued to shoot him even though Gonyer had fallen to the ground after the first four gunshots. Gonyer fell face down and Defendant shot him two more times. The state contends that it proved the elements of second degree murder beyond a reasonable doubt.

Further, the state argues that there was no self-defense evidence presented at trial. Defendant testified on his own behalf and never stated that he was in fear for his life or physical safety. Instead, he was the aggressor in the situation and the person with the gun, shooting at his friends to stop an argument between the two of them.

When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. *State v. Jones*, 50,270 (La. App. 2 Cir. 2/10/16), 188 So. 3d 268, *writ denied*, 16-0858 (La. 5/1/17), 220 So. 3d 742. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana*, 450 U.S. 40, 101 S. Ct. 970, 67 L. Ed. 2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proven beyond a reasonable doubt. *State v. Hearold*, 603 So. 2d 731 (La. 1992). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its

own appreciation of the evidence for that of the fact finder. *State v. Robertson*, 96-1048 (La. 10/4/96), 680 So. 2d 1165.

When a defendant challenges the sufficiency of the evidence in a self-defense case involving a homicide, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *State v. Jackson*, 54,124 (La. App. 2 Cir. 1/12/22), 332 So. 3d 792, *writ denied*, 22-00298 (La. 4/12/22), 336 So. 3d 90.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). A reviewing court may not impinge on the fact finder's discretion unless it is necessary to guarantee the fundamental due process of law. *Id.* The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B).

7

Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1); *State v. Sanders*, 52,632 (La. App. 2 Cir. 5/22/19), 273 So. 3d 635, *writ denied*, 19-01106 (La. 7/17/20), 298 So. 3d 169. Specific intent need not be proven as a fact but may be inferred from the circumstances of the transaction and the conduct of the defendant. *Id.* All that is necessary is that the defendant form the specific intent to kill or inflict great bodily harm for an instant when committing the crime. *Id.* Specific intent to kill or inflict great bodily harm may be inferred from the circumstances of the offense, the extent and severity of the victim's injuries or the defendant's actions in deliberately pointing a gun and firing it at a person. *Id.*

Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary include the excitement and confusion of the situation, the possibility of using force or violence short of killing and the defendant's knowledge of the assailant's bad character. *State v. Edwards*, 49,635 (La. App. 2 Cir. 2/26/15), 162 So. 3d 512, *writ denied*, 15-0628 (La. 2/5/16), 186 So. 3d 1163.

The use of deadly force against an unarmed victim, even in the midst of a physical altercation, may be an excessive use of force. *State v. Alexander*, 51,918 (La. App. 2 Cir. 4/11/18), 247 So. 3d 981, *writ denied*, 18-0805 (La. 2/11/19), 263 So. 3d 436.

A person who is the aggressor or who brings on a difficulty cannot claim self-defense, unless he withdraws from the conflict in good faith. La. R.S. 14:21. Not only must the aggressor withdraw from the conflict, but the withdrawal must be in such a way that the other person "knows or should

8

know" of the desire to withdraw. *State v. Edwards*, *supra*. If the aggressor's withdrawal is not made sufficiently known to his adversary, he is not eligible to claim the justification of self-defense for the homicide. *Id.*

In viewing the evidence in a light most favorable to the prosecution, we find that the state proved beyond a reasonable doubt the essential elements of the crime of second degree murder.

There were many witnesses who testified that the armed Defendant entered the bedroom where his friends were arguing and fired a "warning shot." The victim, who was unarmed, but who was holding a beer bottle, set the bottle down on a dresser and turned toward Defendant, who then shot him six times. Defendant was the only witness who claimed that the victim approached him in an aggressive way. All the other witnesses testified that the victim had taken, at most, one step to place the beer bottle and that his hands remained by his sides.

The state has proven that Defendant had the requisite specific intent to kill or inflict great bodily harm when he deliberately aimed and discharged his firearm at Gonyer six times. The state also proved that Gonyer was not acting in a threatening way toward Defendant, and there was no need for Defendant to defend himself against an unarmed person who was not even approaching him.

For these reasons, the evidence is sufficient to prove Defendant guilty beyond a reasonable doubt of the crime of second degree murder. Therefore, this assignment of error is without merit.

9

*Post-Verdict Judgment of Acquittal*

Although appellate counsel raised the denial of the motion for post-verdict judgment of acquittal as an error, it combined the argument with that of sufficiency of the evidence.

The state argued that the standards of review are the same for a denial of a post-verdict judgment of acquittal as for sufficiency to sustain a verdict. For this reason, the state argues that the evidence was sufficient to support the jury's verdict of guilty of second degree murder; and the trial court correctly denied the motion for post-verdict judgment of acquittal for the same reason.

A motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. La. C. Cr. P. art. 821(B). This is a question of legal sufficiency. *State v. Mitchell*, 39,305 (La. App. 2 Cir. 2/17/05), 894 So. 2d 1240, *writ denied*, 05-0741 (La. 6/3/05), 903 So. 2d 457, *citing State v. Combs*, 600 So. 2d 751 (La. App. 2 Cir. 1992), *writ denied*, 604 So. 2d 973 (La. 1992).

Having already found that the evidence presented at trial was sufficient and that the state proved Defendant guilty of second degree murder beyond a reasonable doubt, we find that the trial court did not err in denying the motion for post-verdict judgment of acquittal. This assignment of error is without merit.

*Pro Se Assignment of Error*

Defendant has filed a pro se brief and alleged that the trial court erred in failing to allow the introduction of evidence pertaining to pending charges of domestic violence against the victim and his girlfriend and of reciprocal

10

protective orders issued by the court and evidence of the history of violence between them. Defendant argues that during the trial he attempted to support his claim of self-defense by introducing evidence of Gonyer's prior threats or violent character to show why he, Defendant, had a reasonable apprehension of danger which would justify his conduct or would help determine who was the aggressor in the conflict. He claimed that the evidence should have been admitted to prove that Gonyer had made a hostile demonstration or overt act against the accused at the time of the incident.

An irregularity or error cannot be availed of after the verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841; *State v. Harris*, 44,613 (La. App. 2 Cir. 9/23/09), 22 So. 3d 232, *writ denied*, 09-2528 (La. 5/21/10), 36 So. 3d 227. A defendant must make a contemporaneous objection in order to preserve the error for direct review. *Id*.

Because this issue was raised on appeal in Defendant's pro se brief, we will address the issue despite the failure to preserve the issue at the trial court.

Evidence of a person's character or a trait of his character, such as a moral quality, is not admissible in a civil or criminal proceeding for the purpose of proving that he acted in conformity therewith on a particular occasion. La. C.E. art. 404(A). An exception to this rule is found in La. C.E. art. 404(A)(2), which allows evidence of the character of the victim if the evidence is of a pertinent trait of character, such as a moral quality of the victim of the crime offered by an accused, or by the prosecution to rebut the character evidence. However, evidence of a victim's dangerous character is

11

not admissible in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged. *Id.*

La. C.E. art. 404(B)(1) concerns evidence of other crimes, wrongs or acts and states that such evidence is not admissible to prove the character of a person in order to show that he acted in conformity therewith. La. C.E. art. 404(B)(2) also states that in the absence of evidence of a hostile demonstration or an overt act on the part of the victim at the time of the offense charged, evidence of the victim's prior threats against the accused, or the accused's state of mind as to the victim's dangerous character, is not admissible.

In this case, the trial court examined the evidence which Defendant sought to introduce in court and determined that the requirements of La. C.E. art. 404 had not been met for the introduction of evidence regarding prior arrests or prior events related to domestic abuse or violence between Gonyer and Cowan. It found that there had been no evidence of a hostile demonstration or an overt act on the part of the victim at the time of the incident which would warrant introduction of the evidence.

For the foregoing reasons, we find no error in the ruling of the trial court. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Brandon Curtis McLaughlin are affirmed.

**AFFIRMED.**

12