Judgment rendered July 16, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,326-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

CHARLENE HENDERSON                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 289,211

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Chad M. Ikerd

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

COURTNEY N. RAY
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before COX, ROBINSON, and HUNTER, JJ.

**COX, J.**

The case arises out of the First Judicial District Court, Caddo Parish, Louisiana. Charlene Henderson was found guilty of second degree murder and possession of a firearm or carrying a concealed weapon by a convicted felon. She was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence for the second degree murder conviction and 20 years at hard labor without the benefit of parole, probation, or suspension of sentence for the weapon conviction. The sentences were ordered to run consecutively. Henderson now appeals, arguing the State did not disprove her self-defense claim. For the following reasons, we affirm Henderson's convictions and sentences.

## FACTS

Larry Clark was shot in his home in Shreveport, Louisiana on May 16, 2022. Henderson was indicted on August 16, 2022, for one count of second degree murder (in violation of La. R.S. 14:30.1) and one count of possession of a firearm or carrying a concealed weapon by a person convicted of certain felonies (in violation of La. R.S. 14:95.1). The following testimonies and evidence were presented at trial:

Dr. James Traylor, an expert in forensic pathology, testified that he performed the autopsy on Clark. He stated that there were two penetrating gunshot wounds to the left side of Clark's head. Dr. Traylor testified that gunshot wound A's entry was near the top of the left ear and through the brain, and its path was from "left to right, top to bottom and slightly from back to front[.]" He stated that gunshot wound B's entry was through the left earlobe and into the neck, and its path was from "left to right, top to bottom and from front to back[.]" Both bullets were recovered during the

autopsy. Dr. Traylor testified that Clark's cause of death was "two gunshots to the head resulting in craniocerebral injury."

Gerald Thomas testified that he is a shift supervisor and custodian of records with the Shreveport Police Department ("SPD"). He stated that he keeps track of all phone recordings coming through SPD, including 911 calls. He testified regarding the 911 call on May 16, 2022, at 3:04 a.m. The call was played for the jury. In the call, Henderson stated that she and Clark were arguing, he grabbed his gun when he got out of the shower, and she shot him. She also stated the gun was still in the home.

SPD Officer Nathaniel Davis testified that he was dispatched to the shooting location after the 911 call was received. He testified that when he arrived at the home, he smelled gasoline, observed a gas can nozzle in the living room, and found the deceased in the bathroom. He stated that the deceased was wrapped in a carpet-type material, had at least one gunshot wound to the head, and was located near a firearm with what appeared to be dried blood.

SPD Corporal Jonathan Varnell testified that he took photos of the crime scene and vehicle connected with the crime. He described the photos, which were introduced into evidence. Corporal Varnell identified a projectile, firearm, and the rounds recovered from the firearm that he collected from the scene.

Phillip Stout, a firearms section supervisor at the North Louisiana Crime Lab, was accepted as an expert in the field of forensic firearm examination. He testified that he test-fired the handgun recovered from the scene only once because the gun malfunctioned and fired without pulling the trigger. He stated that the handgun recovered from the scene was a .40

2

caliber, the projectiles recovered during the autopsy and at the scene were from a .357, and the projectiles did not match the markings from the test-fired .40 caliber markings; therefore, the projectiles were not shot from the .40 caliber handgun found at the scene.

SPD Sergeant John Madjerick was accepted as an expert in fingerprint identification and comparison. Sgt. Madjerick fingerprinted Henderson in court. He compared the fingerprints taken in court to those on the amended bill of information and determined that they were a match.

Tyler Sheets, with the Caddo Parish District Attorney's Office, was accepted as an expert in cell phone forensic examination. Mr. Sheets testified that he examined the cell phone and extracted its information; he was able to locate a picture taken at 2:40 a.m. the day of the shooting that was sent as a text. The picture included the deceased and the area surrounding him.

SPD Detective Montrell Jackson testified that he investigated the shooting on May 16, 2022. He stated that investigators recovered the .40 caliber handgun from the scene, but no other weapons or shell casings were found. He testified that before entering the home, he could smell gasoline, and the odor was stronger while inside the home. Det. Jackson testified that the blood around Clark was clotting and getting thicker when he arrived. He stated that he was informed that Henderson's vehicle was parked at her mother's house, about a block away from the crime scene.

Det. Jackson interviewed Henderson at the police station. He stated that although she spoke with them, she did not tell them about what happened between her and Clark. The video of Henderson's interview was played for the jury. Det. Jackson testified that he obtained a warrant for

Henderson's cell phone and had it searched. He stated that the photo of the crime scene on Henderson's cell phone depicted the crime scene differently than when he arrived. Det. Jackson stated that there was no weapon near the victim in the cell phone photo, and the cell phone photo depicted a rolled-up piece of paper on Clark's back. He testified that the cell phone picture of the victim was texted to Henderson's brother.

Det. Jackson testified that information from Henderson's 911 call indicated the gun was still in the home, but they did not locate the gun used to kill Clark in the home. He stated that Henderson did not have any injuries or defensive marks. The State rested at the conclusion of Det. Jackson's testimony.

Christina Lofton testified that she is the mother to Clark's minor children. She testified to Clark's general reputation: he was not a peaceful man; he carried a gun; and he would use a gun.

Marlo Turner testified that she has known Henderson for about 15 years and met Clark around 2020. She described Henderson's and Clark's relationship as controlling—Clark "always held her hand like real tight" and Henderson always looked down. Ms. Turner testified that she had observed black eyes, a busted lip, and bruises on Henderson, and it was her understanding that Clark was responsible for the injuries.

Henderson elected to testify. She testified that she grew up in Shreveport, attended Fair Park and Southwood High Schools, obtained her GED, was raised by a single mom, and had a good childhood. She stated that in her marriage to Clark, some days were good, but most days were bad. Henderson testified that she has three adult children and one grandchild on the way.

4

Henderson described a time when Clark beat her and pistol whipped her in the back seat of a vehicle. She stated that Clark would point a gun at her when he got mad and say that he was going to kill her. Henderson stated that on the day of the shooting, Clark came to her at work to get her to fix his phone; she asked her brother (who was also a co-worker) to cover her shift so she could look at the phone. She stated that when they got home, nothing was wrong with his phone; they worked on some chores around the house; he yelled at her; and she left to go to her mom's house and get gas. Henderson stated that she ended up driving to a friend's house, drank a lot, and was not sure how or when she got back home.

Henderson testified that she woke up early in the morning because she smelled gasoline, and her clothes and hair were wet. She stated that when she woke up, she found Clark in the bathroom, she asked him why she smelled like gas, and he stated that she was going to find out. She stated that the following occurred after her conversation with Clark:

> When he reached for his gun that was sitting on the sink, I took off running and when - - like when you come out of our bathroom and you go straight this way, it's the washroom. I went into the washroom and the washroom is where all the other guns and stuff was. So right there when I go in the door, we had this, like, deep fryer thing right there and if you pick up the basket, it was the .38 sitting right there. I grabbed it, and when I grabbed the .38, I went back that way and I closed my eyes when I got in the hallway and I just started shooting.

Henderson testified that she shot Clark because she was afraid he was going to kill her. She stated that she left, drove around, threw the gun over the Texas Street bridge, and went to her brother's house. Henderson stated that she moved the gun and then put it back next to Clark, but she did not know why. The Defense rested after Henderson's testimony.

5

The jury found Henderson guilty as charged of second degree murder and possession of a firearm by a convicted felon. After the verdict was rendered, Henderson filed a motion for judgment of acquittal and motion for new trial; both were denied by the trial court.

For the second degree murder conviction, the trial court sentenced Henderson to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence and 20 years at hard labor without the benefit of parole, probation, or suspension of sentence for the possession of a firearm conviction. After sentencing, Henderson filed a motion to reconsider sentence, which was denied by the trial court. Henderson now appeals.

**DISCUSSION**

Henderson argues that the State failed to sufficiently prove that she was guilty of second degree murder; the State failed to carry its burden of disproving self-defense; and this was a justifiable homicide. She requests that this Court reverse the verdict and issue an acquittal.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827. The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Bass*, 51,411 (La. App. 2 Cir. 6/21/17), 223 So. 3d 1242. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or

6

in part.  *State v. Alexander*, 51,918 (La. App. 2 Cir. 4/11/18), 247 So. 3d 981, *writ denied*, 18-0805 (La. 2/11/19), 263 So. 3d 436.

When the defendant claims self-defense, the State has the burden to prove beyond a reasonable doubt that the homicide was not committed in self-defense.  *State v. Allen*, 50,703 (La. App. 2 Cir. 8/10/16), 200 So. 3d 376, *writ denied*, 16-1734 (La. 9/6/17), 224 So. 3d 981; *State v. Edwards*, 49,635 (La. App. 2 Cir. 2/26/15), 162 So. 3d 512, *writ denied*, 15-0628 (La. 2/5/16), 186 So. 3d 1163.  When a defendant claiming self-defense challenges the sufficiency of the evidence on appeal, the question becomes whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense.  *Id*.

A homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger.  La. R.S. 14:20(A)(1).  The possibility of retreat may not be considered as a factor in determining whether or not the defendant had a reasonable belief that deadly force was reasonable and apparently necessary. La. R.S. 14:20(D).

Factors to consider in determining whether a defendant had a reasonable belief that the killing was necessary include the excitement and confusion of the situation, the possibility of using force or violence short of killing, and the defendant's knowledge of the assailant's bad character. *State v. Jones*, 48,458 (La. App. 2 Cir. 11/20/13), 128 So. 3d 593, *writ denied*, 13-2926 (La. 5/30/14), 140 So. 3d 1173.

Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Alexander, supra.* The trier of fact is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part. The reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *Id.*

Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(1). The penalty is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:30.1(B).

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances and the actions of the defendant. *State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951. Specific intent can be formed in an instant. *State v. Washington*, 50,424 (La. App. 2 Cir. 3/16/16), 188 So. 3d 350, *writ denied*, 16-0718 (La. 4/13/17), 218 So. 3d 119.

The discharge of a firearm at close range and aimed at a person is indicative of specific intent to kill or inflict great bodily harm upon that person. *State v. Lloyd*, 48,914 (La. App. 2 Cir. 1/14/15), 161 So. 3d 879, *writ denied*, 15-0307 (La. 11/30/15), 184 So. 3d 33, *cert. denied*, 580 U.S. 897, 137 S. Ct. 227, 196 L. Ed. 2d 175 (2016). Specific intent to kill may also be inferred from the extent and severity of the victim's injuries and the

8

defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. *State v. Washington, supra*.

The determination of whether the requisite intent to kill is present is a question for the trier of fact. *State v. Walker, supra*.

In the case before us, the jury was able to hear from the only witness to the shooting, Henderson. The jury was able to view the video of Henderson's statement to police, listen to Henderson's 911 call, and observe Henderson on the stand. The jury weighed Henderson's testimony against the other evidence presented at trial and did not find that she acted in self-defense. We find the jury's decision to reject Henderson's testimony and find her guilty of second degree murder to be reasonable in light of the evidence presented.

The State presented the photo Henderson took of the crime scene and compared it to the photo of the crime scene taken by investigators. As testified by Det. Jackson, the crime scene was altered from the cell phone photo to the investigator's photos—the gun was placed next to Clark's body and rolled paper was removed from Clark's body. Det. Jackson also testified that Henderson indicated in the 911 call that the gun was still in the home, but it was not located by investigators. Henderson testified that she drove around and threw the gun over the Texas Street bridge. Henderson shot Clark twice in the head at a close distance within the house. Both shots were through the left ear and slightly back to front.

Because of the inconsistencies in Henderson's testimony and the evidence submitted, it was reasonable for the jury to find that she did not act in self-defense and is guilty of second degree murder. For these reasons, we affirm Henderson's conviction of second degree murder.

## CONCLUSION

For the reasons stated above, we affirm Henderson's convictions and sentences.

**AFFIRMED.**